IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| CHARLES GARRISON | : | NO. 92-455 |

**MEMORANDUM AND ORDER**

Gene E.K. Pratter, J.                                                                                        October 12, 2005

**INTRODUCTION**

      Defendant Charles Garrison seeks dismissal of the charges against him for his alleged violation of the conditions of his supervised release. The basis of his motion is that the passage of almost five years is too much time between the issuance of the Notice of Violation and the conduct of the hearing on the allegations of violation such as to run afoul of constitutional due process demands. Even though no specific prejudice has been visited upon Mr. Garrison by the passage of time in this instance, he contends that due process demands that he be free from the risk of revocation of his supervised release. As compelling as Mr. Garrison's position may seem at first blush, for the reasons explained below the Court finds that Mr. Garrison has suffered no loss of his rights to due process. The Court also finds that Mr. Garrison has violated the conditions of his supervised release and sentences him to 18 months' incarceration, to be served commencing upon his release from state incarceration, and to be followed by 18 months' supervised release.

**BACKGROUND FACTS**

Defendant Charles Garrison, charged by a federal grand jury with possession of a firearm by a convicted felon, was convicted on March 2, 1993 following a jury trial. (Docket No. 26). He was sentenced on June 2, 1993 to 110 months' imprisonment, to be followed by a three-year term of supervised release. (Docket No. 38). The Third Circuit Court of Appeals affirmed the conviction. (Docket No. 55).

Mr. Garrison was released from federal prison on February 23, 2000 and began his term under supervision. As a federal supervised releasee, Mr. Garrison was obliged to comply with various terms and conditions, including a prohibition on committing any federal, state or local crime. Mr. Garrison was informed that violation of conditions of his supervised release would subject him to possible further federal incarceration. While on supervised release, according to a report received contemporaneously by Mr. Garrison's Probation Officer from the Philadelphia Police, on November 10, 2000 Mr. Garrison allegedly stabbed his brother in the chest during a family dispute and thereafter and fled before being arrested on November 14, 2000. Given the nature of the alleged conduct, the U.S. Probation Officer issued a Notice of Violation of Supervised Release on November 16, 2000 that was then ordered to become part of Mr. Garrison's federal court records by the District Court.[1] The Court issued a warrant on November 28, 2000 to be used as a detainer, but that detainer was not then executed, and no violation hearing was scheduled at that time.

Philadelphia authorities charged Mr. Garrison with attempted murder, aggravated assault,

---

[1] Originally, Mr. Garrison's matters were on the docket of District Court Judge James McGirr Kelly. Following Judge Kelly's death, this case was transferred to the undersigned on March 16, 2005.

possession of an instrument of crime and fleeing the police. On January 31, 2003 Mr. Garrison was convicted in state court of one count of aggravated assault and possession of an instrument of crime. He was found not guilty of one other count of aggravated assault. The remaining charges were not pursued. A sentence of 48 to 96 months' imprisonment was imposed on the aggravated assault conviction and 12 to 24 months on the possession of an instrument of crime conviction, with the two sentences to run concurrently. On April 21, 2003 Mr. Garrison appealed to the Pennsylvania Superior Court which affirmed the convictions on March 16, 2004.

Mr. Garrison was not in federal custody at any time following his February 2000 release until he appeared for the hearing before this Court on September 14, 2005. He has been incarcerated in state facilities since November 2000 in connection with the charges and convictions described above and, according to information provided to the Court by Mr. Garrison and his counsel, he will not be released from state custody before December 2007. (9/14/05 Hrg. Tr. at 15).

On March 29, 2005 the Probation Officer requested this Court to hold a Violation of Supervised Release Hearing. The violation hearing originally scheduled for July 18, 2005 was continued in order for the Court to consider Mr. Garrison's Motion To Dismiss Violation of Supervised Release. The Motion was denied on August 2, 2005 without prejudice to Mr. Garrison to renew his motion in connection with a rescheduled hearing (Docket No. 88). The violation hearing was rescheduled for September 14, 2005. (Docket No. 87).

At the violation hearing, which Mr. Garrison attended, the Motion to Dismiss on due process grounds, which the Government opposes, was renewed. Mr. Garrrison's counsel argues on his behalf that subjecting Mr. Garrison to the risk of a violation determination almost five

years after the issuance of the Notice of Violation of Supervised Release violates Mr. Garrison's due process rights. Specifically, Mr. Garrison contends that pursuant to <u>Morrissey v. Brewer,</u> 408 U.S. 472 (1972), a revocation hearing such as initiated here by the U.S. Probation Officer against Mr. Garrison must be held within a "reasonable time" after the "lodging of a detainer" for a violation. The parties agree that Mr. Garrison's 2003 state court convictions constitute a violation of a condition of Mr. Garrison's federal supervised release and that he may be ordered by this Court to serve up to an additional 24 months imprisonment for such a violation. (9/14/05 Hrg. Tr. 6-7, 9). Therefore, the issues for the Court are (1) whether the due process challenge has merit and, if not, (2) whether Mr. Garrison's supervised release should be revoked to require Mr. Garrison to serve a further term of federal imprisonment pursuant to 18 U.S.C. § 3583 (e)(3).

For the reasons set forth below, the Court concludes that Mr. Garrison's Motion should be denied and finds that Mr. Garrison has violated a condition of his supervised release, that his supervised release shall be revoked and that following his release from state-imposed incarceration he shall be required to serve 18 months' federal incarceration to be followed by 18 months' supervised release subject to the supervision of the U.S. Probation Service under the standard conditions required in this judicial district.

**DISCUSSION**

None of the foregoing factual recitation concerning the history of this matter is in dispute. The violation with which Mr. Garrison is charged is his commission of new crimes while on supervised release. Thus, the fact of his convictions, affirmed by the state appellate court, conclusively proves the violation. Counsel for Mr. Garrison candidly acknowledges that under such circumstances during the almost five years between the issuance of the Notice of Violation

and the actual Violation Hearing, no harm or prejudice (such as faded memories, lost evidence, or the like) has befallen her client.  Indeed, it appears that there is no disagreement with the Probation Department's position that (1) its November 2000 Notice essentially was unnecessary in that Mr. Garrison's <u>arrest</u> in and of itself would not have constituted a violation; (2) the earliest a violation could have been determined was the January 31, 2003 conviction; (3) that Mr. Garrison's Probation Officer was willing to forebear pursuing the violation until resolution of the state court appeal which did not affirm the conviction until March 2004; and (4) permissible and customary Probation Department practices would have allowed for holding off on the initiation of Violation procedures (or at least Mr. Garrison's service of additional incarceration for the violation could have been postponed) until the conclusion of Mr. Garrison's state incarceration (estimated to be in late 2007).  (9/14/05 Hrg. Tr. at 11-15).

   Mr. Garrison's counsel instead argues for the imposition of a laches-type analysis to find that holding a hearing to determine whether Mr. Garrison violated his supervised release condition almost five years after he was notified that the Probation Office had reason to suspect his release status would be in jeopardy "is way too much."  (9/14/05 Hrg. Tr. at 9,11.)  Of course, if one were to look at the event constituting the violation, i.e., his conviction, Mr. Garrison's actual violation hearing on September 14, 2005 was two years and nine months thereafter and 18 months after that conviction was affirmed by the appellate court.  Looked at from that perspective, the elapsed time falls within the two-to-three years time period that Mr. Garrison's counsel agrees does not inexorably trigger her same due process concerns.  (9/14/05 Hrg. Tr. 10, at 12).

   Mr. Garrison calls the Court's attention to two cases, <u>Morrissey v. Brewer</u>, <u>supra</u> and

U.S.A. ex rel. Burgess v. Lindsey, 395 F.Supp 404 (E.D. Pa. 1975), to support his due process argument. In Morrissey, the Supreme Court announced a due process rubric for parole revocation procedures. In essence, the Court ruled that a parolee must be afforded a preliminary probable cause hearing when he is arrested for a parole violation and a more thorough revocation hearing that meets conventional due process requirements within a reasonable time *after he is taken into custody*. Thus, Morrissey focused on the conditional freedom of a parolee generated by statute (i.e., the then extant statutory scheme authorizing parole) as a liberty interest protected by the Due Process Clause of the Fourteenth Amendment which may not be terminated absent appropriate due process safeguards.

Morrissey provides the essential analytical structure for Mr. Garrison's other case reference, the 1975 Burgess opinion of Judge Higginbotham who then served on the district court. In Burgess, a state prisoner-parolee challenged the Pennsylvania Board of Probation and Parole practice of detaining a parolee charged with a new offense and postponing his revocation hearing until after trial and sentencing on the new offence. In Burgess the delay at issue was nine months. Recognizing that Morrissey did not precisely fit the Burgess facts, Judge Higginbotham disclosed his difficulty "in determining the extent to which the Morrissey standards apply" to the facts before him. Burgess, supra at 412. As a result, Judge Higginbotham acknowledged that the uncertain constitutional contours of Morrissey warranted district court judges being "especially cautious about writing overly expansive constitutional opinions which go far beyond the factual parameters of the particular case they are deciding". Id. Nonetheless, in Burgess the court ruled that it was a constitutional due process violation for the Board to detain a parolee for a period of nine months awaiting trial and sentencing on a new crime.

6

While it is understandable that Mr. Garrison would fasten upon the unconstitutional status of the nine month passage of time in Burgess and the Supreme Court's admonition in Morrissey that two months is "not unreasonable," Mr. Garrison ignores the fundamental, and as a result of this Court's analysis, determinative difference here. In Morrissey and Burgess, unlike Mr. Garrison's case, the parolees awaiting revocation hearings were in the custody of the authorities that would be conducting the revocation hearing because detainer warrants had been issued and executed against them. In Mr. Garrison's case, while a federal detainer was issued in November 2000, it was not executed until it was time to move forward with the September 14, 2005 hearing. He remained in state custody at all times in the interim.

The importance of these distinctions was highlighted in Burgess itself with the court's discussion of the Fifth Circuit Court of Appeals opinion in Cook v. United States Attorney General, 488 F.2d 667 (5th Cir. 1974). In Cook, a parolee committed a crime that led to his return to federal custody. The parole board issued a parole violator's warrant, but it was returned unexecuted pending completion of the intervening sentence. Six years later a revocation hearing was held and the appellee-inmate's parole was revoked. The Cook trial court agreed that the six year time period was violative of the Due Process Clause. The Court of Appeals reversed to find no constitutional violation. The Burgess court explained that the Cook analysis would not control Burgess because Cook rested on two factors not present in Burgess, namely, that in Cook the detainer warrant had not been executed and the plaintiff-prisoner in Cook did not make a showing that he had been prejudiced by the delay. Thus, Mr. Garrison's case is much closer to the Cook facts than it is to the Burgess facts.

The Cook analysis was subsequently validated by the Supreme Court in Moody v.

Daggett, 429 U.S. 78 (1976), an opinion not available for the earlier Burgess opinion.  In Moody, certiorari was granted in order to resolve a split among the courts of appeals on the issue of whether a federal parolee imprisoned for a crime committed while on parole is constitutionally entitled to a prompt parole revocation hearing when a parole violator warrant is issued and lodged as a detainer with the institution of his confinement but has not been executed.[2]  In Moody the United States Board of Parole refused the prisoner's request for an immediate revocation hearing and indicated an intention to execute the warrant only upon the petitioner's release from his second sentence, which had been for two 10-year concurrent sentences.  As is the case with Mr. Garrison's state court conviction here, the Moody petitioner's subsequent crimes "constituted obvious violations" of the terms of his parole.  Moody, supra at 80.  After summarizing its earlier Morrissey opinion, and noting that unlike Morrissey, the Moody petitioner had not been deprived of his liberty by the issuance of the detainer, Moody at 86 n.7, the Supreme Court framed the issue in Moody as "not whether a Morrissey-type hearing will ever be constitutionally required but whether a hearing must be held...before the parolee is taken into custody as a parole violator."  Id. (footnote omitted).  The Moody petitioner's loss of liberty, like Mr. Garrison's here, did not derive from the detainer warrant but from his subsequent conviction.  The Court observed that the issuance of the detainer "did no more than express the Board's intent to defer consideration of parole revocation to a later time."  Id. at 87.  Thus, the Moody Court explained that Morrissey's pronouncement that a revocation hearing must be held within a

---

[2]In addition to the Fifth Circuit Court of Appeals in Cook, the Supreme Court identified a Third Circuit Court of Appeals affirmance without opinion of Orr v. Saxbe, No. 74-341 (M.D.Pa. Nov. 27, 1974), aff'd without opinion, 517 F.2d 1399 (3rd Cir. 1975), among those circuits that had held that no due process requirements attach under such circumstances.  Moody, supra n.1.

reasonable time after the parolee is taken into custody "established execution of the [detainer] warrant and custody under that warrant as the operative event triggering any loss of liberty attendant upon revocation. This is a functional designation, for the loss of liberty as a parole violator does not occur until the parolee is taken into custody under warrant." Id.

Applying this functional designation to Mr. Garrison's situation,[3] this Court finds that no denial of constitutional due process has been visited upon him. The Court sees this result as consistent with the post-Moody decision of the Third Circuit Court of Appeals in U.S. ex rel Caruso v. U.S. Board of Parole, 570 F.2d 1150 (3rd Cir. 1978) (lodging an unexecuted federal parole violator warrant as a detainer with state prison authorities does not violate due process rights of a state prisoner when he is not afforded an immediate parole revocation hearing).

The remaining inquiry is whether Mr. Garrison has, in fact, violated a condition of his supervised release. His 2003 conviction, upheld by the Pennsylvania Superior Court in 2004, constitutes an undeniable violation of his supervised release. It is a significant violation, representing his commission of a violent crime and, at the very least, represents Mr. Garrison's failure to comport himself while on supervised release in a manner that does not put others in physical danger. Therefore, the Court concludes that an 18 month period of further federal incarceration, commencing upon his release from state confinement, to be followed by 18

---

[3]The Court recognizes that Moody, like Morrissey and Burgess, concerned parole revocation procedures and that parole is no longer available to federal prisoners. Mr. Garrison's case, of course, concerns supervised release. For purposes of applying the principles set out by the Supreme Court in Moody, the Court finds that there is no functional distinction that would make a difference.

months' additional supervised release is appropriate.  An Order consistent with this

Memorandum follows.

                                              By the Court:

                                              _____

                                              Gene E.K. Pratter
                                              *United States District Judge*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| CHARLES GARRISON | : | NO. 92-455 |

**ORDER**

AND NOW, this 12th day of October, 2005, for the reasons set forth in the accompanying Memorandum of the same date, the oral Motion of Defendant Charles Garrison to dismiss the Notice of Violation is **DENIED**.

It is further **ORDERED** that the Court finds that Charles Garrison has violated the conditions of his supervised release and that upon Defendant Garrison's completion of his current state conviction sentence he shall be taken into the custody of the United States Bureau of Prisons to serve 18 months' incarceration and at the expiration of the period of incarceration Mr. Garrison shall be subject to a period of 18 months' supervised release subject to the same terms and conditions as applied to his non-revoked supervised release.

It is further **ORDERED** that Defendant Garrison shall be returned to the custody of the appropriate authorities of the Commonwealth of Pennsylvania.

BY THE COURT:

_____
Gene E.K. Pratter,                    J.